856 So.2d 535 (2003)
Edith BEVIS, Individually, and as Widow of Eddie Ray Bevis, Deceased, for and on behalf of all Wrongful Death Beneficiaries, Appellant,
v.
LINKOUS CONSTRUCTION COMPANY, INC. and Westinghouse Electric Corporation, Inc., Appellees.
No. 2002-CA-00134-COA.
Court of Appeals of Mississippi.
May 13, 2003.
Rehearing Denied August 12, 2003.
Certiorari Denied December 11, 2003.
*537 Timothy Taylor, Bobby Floyd Martin, Memphis, TN, attorneys for appellant.
Louis G. Baine, Jan F. Gadow, Ridgeland, Todd Britton Murrah, Memphis, TN, attorneys for appellee.
Before McMILLIN, C.J., BRIDGES and GRIFFIS, JJ.
McMILLIN, C.J., for the court.
¶ 1. Eddie Ray Bevis, an ironworker employed by Fischer Steel Company, was killed in a construction accident at a job site in Marshall County. At the time of the fatal accident, Fischer Steel was serving as a subcontractor to Linkous Construction Company, Inc., the primary contractor. *538 The project was the construction of a distribution center for Westinghouse Electric Corporation, Inc., the owner of the real property.
¶ 2. Bevis's surviving widow filed suit in Marshall County Circuit Court seeking damages for herself based largely on a loss of consortium claim. She also asserted a wrongful death claim on behalf of those beneficiaries identified in Mississippi's wrongful death statute. Her suit was brought against Linkous and Westinghouse and Allen & Hoshall, Inc. and claimed that negligence on the part of these defendants proximately caused her husband's death. The circuit court granted a motion by Linkous for summary judgment on a finding that, as to Linkous, a claim for benefits under Mississippi's workers' compensation was the exclusive remedy. Westinghouse successfully pursued a motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) contending that the complaint failed to state a claim upon which relief could be granted. The trial court, in resolving the claims against these two entities, made the appropriate certifications under Mississippi Rule of Civil Procedure 54(b) to permit an interlocutory appeal. The claim against Allen & Hoshall, Inc., the design engineers for the project, is not before us. Ms. Bevis filed her notice of appeal as to both Westinghouse and Linkous and the two decisions are now before this Court for resolution. For reasons we will proceed to set out, we affirm the trial court.

I.

The Claim Against Westinghouse
¶ 3. The complaint alleges that Bevis, while in the course of his duties at the Westinghouse construction site, was working on a steel beam some thirty-five feet in the air when the beam collapsed and he fell to the ground, suffering injuries that ultimately led to his death a short time later.
¶ 4. The complaint alleges that the corporation "contracted for the construction of a distribution center ... in Marshall County, Mississippi." The next paragraph of the complaint alleges that Linkous was the contractor for the project. After those preliminary allegations, the sole remaining information relating to Westinghouse is paragraph 18 of the complaint, which we quote in full:
18. Your Plaintiff would aver that Defendant Westinghouse was negligent in that it failed to properly inspect and properly provide a reasonably safe workplace; use reasonable care to prevent bodily injury or death to those persons working in areas where they might reasonably be expected to work; that it had a duty to safeguard against injuries arising from construction operations and to correct and remove reasonably foreseeable causes of danger and adequately warn of dangerous conditions existing on the job site premises and to ensure that the construction site was safe and proceeding according to proper design specifications. That this failure to inspect and warn was the proximate cause of Plaintiff's severe injuries, death and damages.
¶ 5. Westinghouse, relying on established Mississippi case law generally absolving a property owner from liability for the negligent acts of an independent contractor involved in a construction or improvement project on the property, moved for judgment on the pleadings. In the alternative, Westinghouse asked that Ms. Bevis be required to offer a more definite statement of the facts relied upon to support her claim as permitted by Mississippi Rule of Civil Procedure 12(e). In a response to that motion, Ms. Bevis declared *539 her position that the complaint provided adequate notice of the nature of her claim and "therefore a more definite statement is unnecessary." It was with the case in that posture that the circuit court granted Westinghouse's motion to dismiss for failure to state a claim upon which relief could be granted.
¶ 6. Our review of such action is de novo. Arnona v. Smith, 749 So.2d 63(¶ 6) (Miss.1999). We must accept as true all well-pled allegations in the complaint. Id. A motion to dismiss under Rule 12(b)(6) should be granted (and affirmed on appeal) only when, based on a review of the complaint, it appears beyond doubt that the plaintiff would be unable to prove any set of facts that would support a right of recovery. Overstreet v. Merlos, 570 So.2d 1196, 1197 (Miss.1990).
¶ 7. The well-pled facts in this case, insofar as a claim against Westinghouse is concerned, are that Westinghouse owned a parcel of real property, that it contracted with Linkous to construct a warehouse on the property, that Bevis was working as an employee of one of Linkous's subcontractors when he was killed in a fall occasioned by the collapse of a structure on which Bevis was working, and that the structure collapsed because the general contractor, Linkous, improperly installed replacement anchor bolts intended to secure the steel beam that collapsed when the bolts subsequently failed. The remaining allegations relating to Westinghouse consist of general allegations of the existence of various duties allegedly owed by Westinghouse to Bevis without any attendant explanation of the facts that would give rise to these duties.
¶ 8. Looking solely at the facts set out in the complaint, therefore, we must consider whether a recognized theory exists in Mississippi negligence law that would permit recovery by Ms. Bevis and the remaining wrongful death beneficiaries against Westinghouse. We conclude that such a theory does not exist and that the trial court did not err in dismissing Westinghouse.
¶ 9. We begin our analysis with a recognition of the general principle of law that a property owner who contracts for repairs or improvements to the property is not liable for injuries to workers on the premises arising out of the acts or omissions of the contractor. Magee v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 185 (Miss.1989). As to the premises owner in circumstances such as are alleged to have existed in this case, the duty is to surrender to the contractor a reasonably safe working environment, which would include a duty to warn of hidden hazards or defects on the property that existed prior to the commencement of the work. Mississippi Power Co. v. Brooks, 309 So.2d 863, 866 (Miss.1975). Any duty to warn of hazards arising out of the construction itselfassuming such duty could be shown to existis deemed satisfied by a showing that the contractor had actual knowledge of the hazardous condition. Jones v. James Reeves Contractors, Inc., 701 So.2d 774, 783 (Miss. 1997). The ensuing duty to warn or otherwise protect those individuals on the property as employees and agents of the contractor rests solely with the contractor. This shift in the duty to warn and protect from the owner to the contractor includes any such duties owed to the contractor's subcontractors and employees of those subcontractors. Coho Resources, Inc. v. McCarthy, 829 So.2d 1 (¶ 31) (Miss.2002).
¶ 10. The hazardous condition complained of in this case did not arise out of a condition of the property created by the owner or existing on the property in a concealed state at the commencement of the project. Rather, it was a hazard created *540 by the contractor, Linkous, in the course of completing its duties under the construction contract. In such a situation, it is logically impossible to argue that Linkous had no knowledge of the condition or that Westinghouse somehow had an awareness of both the fact of the hazardous condition and an appreciation of the dangerous nature of the condition that was superior to that of Linkous, the general contractor and the entity that created the alleged hazard. While Ms. Bevis, in her brief, strongly urges that the facts showed that Westinghouse contractually retained significant control over the course of the construction contract, there is no such assertion to be found in the complaint.
¶ 11. A review of the above-quoted paragraph 18 of the complaint reveals that it does nothing more than change the violation of a number of duties allegedly owed by Westinghouse to Bevis. However, they are nothing more than assertions of legal conclusions without any underlying allegations setting out a factual scenario giving rise to the alleged duties. Taking the facts as set out in Ms. Bevis's complaint and applying the existing case law of this state, we are left unavoidably with the conclusion that Bevis was injured as the result of a hazardous condition on the premises created by the general contractor, Linkous, and for which Westinghouse had no duty, as to Bevis, to warn or otherwise protect against.
¶ 12. Ms. Bevis, in her brief, relies heavily on materials in the record that do not form a part of her complaint. They include quotes from various contractual documents and excerpts from depositions. There is no indication in the record that the trial court relied upon these matters in dismissing the complaint under Rule 12(b)(6). Reliance upon such documents would, under the rules of procedure, have converted the matter to a summary judgment proceeding, which would have required the court to significantly alter its method of proceeding to dispose of Westinghouse's motion. Jones v. Regency Toyota, Inc., 798 So.2d 474(¶ 3) (Miss.2001).
¶ 13. There is nothing in the record to suggest that the court did so. On the face of the complaintwhich is the limit of our inquiry in the present stage of the proceedings against the defendant, Westinghousewe find ourselves faced with the situation where the well-pled facts simply do not give rise to any legally-recognized theory of liability against Westinghouse arising solely on principles of law existing under the general heading of premises liability. Rather, we conclude that the rule of law announced by the Mississippi Supreme Court in James Reeves, holding that actual knowledge on the part of the contractor of a hazardous condition absolves the property owner of any further duty to warn or otherwise protect the contractor and its employees, compels a finding that the complaint fails to state a cognizable claim. James Reeves Contractors, Inc., 701 So.2d at 783.
¶ 14. Any alleged duty of Westinghouse beyond the obligation to warn would not have its foundation in premises liability law, but would involve claims that Westinghouse had affirmative duties, either defacto or dejure in origin, to supervise and inspect the work of its contractor such as were found to exist in Coho Resources, Inc., 829 So.2d at (¶¶ 32-33). Duties such as these are not founded on premises liability law, but arise out of the assumption of certain responsibilities to supervise and inspect an on-going construction project. Such duties are not invoked by a complaint that does nothing other than allege ownership of the real property in one entity (Westinghouse) and the creation of a hazardous condition by an independent contractor working on the property (Linkous) *541 that causes injury to an employee of a subcontractor. This is an entirely different theory of negligence that would require the pleading of facts giving rise to such a claim, i.e., the fact that Westinghouse maintained such a degree of control over the means and method of construction as to give rise to a duty, as suggested in Coho, "to supervise in a safe manner." Id. at (¶ 33).
¶ 15. The absence of any such factual allegations in the complaint, combined with Ms. Bevis's persistent assertion that a more definite statement was unnecessary to put Westinghouse on notice as to the true nature of her claim of negligence, leads us inevitably to the conclusion that the complaint as drafted fails to state a claim under which relief would be appropriate under any recognizable theories of liability existing in Mississippi law. In that situation, we are satisfied that the trial court did not err in dismissing the complaint as to Westinghouse, and we affirm.

II.

The Claim Against Linkous
¶ 16. Ms. Bevis acknowledges a threshold impediment to her claim sounding in negligence against Linkous, which she admits was acting as the general contractor for the project. The impediment is the rule that employees of subcontractors are deemed to be statutory employees of the general contractor for purposes of the workers' compensation laws and that, so long as coverage is provided either by the subcontractor or the contractor, recovery under workers' compensation is the injured worker's sole remedy. Miss.Code Ann. § 71-3-7 (Rev.2000); Richmond v. Benchmark Constr. Corp., 692 So.2d 60, 63 (Miss.1997).
¶ 17. On appeal, she seeks to avoid the application of what has come to be known as the "exclusivity defense" that was successfully asserted by Linkous at the circuit court level by two different routes. First, she urges reconsideration of the exclusivity defense on the apparent basis that the analysis of Richmond cannot stand up to logical scrutiny. Alternatively, she claims that the facts of this case would support the contention that Bevis's injuries were incurred as the result of an intentional tort on the part of Linkous, which is excepted from the exclusivity rule.

A.

Reconsideration of the Exclusivity Defense
¶ 18. This Court, sitting as an intermediate appellate court, is bound by established precedent as set out by the Mississippi Supreme Court and we do not have the authority to overrule the decisions of that court. Kennedy v. State, 766 So.2d 64(¶ 3) (Miss.Ct.App.2000). Reconsideration of the rule in this case could only result from an election by the supreme court to grant certiorari as to this issue.
¶ 19. As a variation on her argument, Ms. Bevis suggests that, because Linkous actually performed the work that led to her husband's injuries, the contractor was not, at the time, acting in its role as general contractor, but was, instead, performing essentially as any other subcontractor on the job and thus not entitled to the protections afforded under section 71-3-7. It is, in fact, true that a subcontractor on a project may be liable in tort for injuries to the employees of other subcontractors if the appropriate showing of negligence is made. Morris v. W.E. Blain & Sons, Inc., 511 So.2d 945, 949 (Miss.1987).
*542 ¶ 20. However, this Court is unaware of any authority supporting the proposition that a general contractor must refrain from doing any actual work on the project and, instead, act solely in a supervisory capacity in order to claim the benefit of immunity afforded a statutory employer under the workers' compensation act. We are not persuaded that this is, or even ought to be, the law.

B.

The Intentional Tort Exception to the Exclusivity Defense
¶ 21. Alternatively, Ms. Bevis contends that the circumstances of this case create a justiciable question as to whether Linkous's conduct constituted a wilful and purposeful effort to inflict injury, thus creating a recognized exception to the contention that workers' compensation recovery is the sole remedy available. We find this argument untenable. The exception urged by Ms. Bevis simply cannot be stretched to fit the essentially uncontested critical facts of the case as they relate to Linkous's actions. In that light, it must be remembered that the matter of Linkous's liability reaches this Court by a different direction than did the matter of the claim against Westinghouse. Linkous successfully pursued a claim for summary judgment under Rule 56, which allows the court to consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. M.R.C.P. 56.
¶ 22. It is from our de novo review of those same pleadings and other materials that were considered by the trial court that we glean information which, when viewed in the light most favorable to Ms. Bevis as the non-moving party, would show these facts. Two bolts, set at a depth of approximately 12 inches in concrete, intended to anchor an upright steel column were somehow damaged prior to the erection of the column. Linkous sought the advice of Allen & Hoshall, as consulting engineers on the project, and was advised to bore out the concrete to a depth of 10 inches below the surface, insert new anchor bolts, and secure them by filling the bored holes with a material called "Por-Rok." In the course of boring two new holes for the bolts, Linkous was unable to bore lower than six inches in one hole and four inches in the other after apparently striking steel or some other material impervious to efforts to drill through it.
¶ 23. Linkous proceeded to set the bolts in these holes that were less than the optimum suggested by the design engineers but made no effort to inform anyone of this fact or to warn others who might be working in the area. The upright column contained a plate that fit over the bolts protruding from the ground that permitted the column to then be secured by the installation of nuts, and the column was installed by that method. It was during the course of Bevis's work that the stresses occasioned by the installation of the cross beam caused movement in the upright beam which pulled the shortened bolts from their concrete and "Por-Rok" mooring, causing the upright beam to then collapse and hurl Bevis to the ground.
¶ 24. Conceding that these facts could be proven by a preponderance of the evidence, we are of the opinion that this would not give rise to tort liability on the part of Linkous under any recognized exception to the exclusivity rule created by the Mississippi Workers' Compensation Act. There have been attempts in the past, when the circumstances of an employee's injury appear particularly egregious, to impose liability in tort on the employer rather than limit the injured worker to the benefits afforded under workers' compensation. Those efforts often use as their *543 foundation the 1984 case of Miller v. McRae's, Inc., 444 So.2d 368 (Miss.1984). In that case, Miller, an employee of McRae's, claimed that she was forced against her will to remain in store offices while she was questioned regarding a sum of money determined to be missing from Miller's department. Id. at 369. She brought an action for false imprisonment and McRae's successfully defended against the action by convincing the circuit court that, because the injuries allegedly occurred during the course of Miller's employment, her sole remedy was a claim under workers' compensation laws. Id. at 370.
¶ 25. On appeal, the Mississippi Supreme Court reversed and remanded. The court noted that workers' compensation laws, by statutory definition, are limited to providing benefits for "accidental injury or accidental death arising out of and in the course of employment...." Id. (citing Miss.Code Ann. § 71-3-3(b) (Rev. 2000)). The supreme court concluded that the trial court had focused entirely on the proposition that Miller's alleged emotional injuries occurred in the course of her employment, but failed to consider the requirement that the injuries must have arisen out of an accident. The court then concluded that "[o]bviously, any injuries sustained as the result of a false imprisonment are not the result of an accident, but rather from a willful act." Id.
¶ 26. Properly interpreted, therefore, Miller does not stand for the proposition that a worker injured in a job-related accident can "opt out" of a workers' compensation claim and pursue a claim in tort if he can show that the conduct of his employer in creating the circumstances causing his injury was particularly offensive or even reprehensible. Instead, Miller stands for the very limited principle that, if the employee is injured by a purposeful and wilful act of the employer, the claim is simply not cognizable under workers' compensation law because it did not arise as the result of a work-related accident.
¶ 27. Subsequent attempts to expand the limited holding of Miller to exclude a particular claim from workers' compensation and permit an employee to proceed against his employer in tort have been unsuccessful. In Griffin v. Futorian Corp, a worker was seriously injured for a second time in almost identical circumstances when he fell into the blade of a sawing machine. He sought to engraft an exception to the exclusivity provisions of workers' compensation law, apparently relying on a claim of bad faith on the part of his employer for its obstinate failure to properly correct a demonstrably hazardous work environment. Griffin v. Futorian Corp., 533 So.2d 461, 463-464 (Miss.1988). The supreme court declined to do so and said that Miller remained the sole recognized means of avoiding an exclusivity claim by a defendant employer. The court went on to state that, in order to defeat such a claim, the plaintiff must show (a) that the injury was caused by the willful act of another employee acting in the course of his employment and (b) the injury must be one that is not compensable under the act. Griffin, 533 So.2d at 464. We have some difficulty in understanding the need for a two-part test of the nature first plainly articulated in Griffin since it would appear under the rationale of Miller that a claim that failed either prong (a) or prong (b) of the test would, by definition, fail the other. In all events, it is quite plain from a reading of Griffin that only wilfully inflicted injuries are excepted from the exclusivity provisions of workers' compensation law because such injuries do not, at any point in the analysis, invoke the concept of an accidental injury.
*544 ¶ 28. The more recent case of Peaster v. David New Drilling Co., Inc., represents yet another attempt to expand the holding in Miller. Peaster, 642 So.2d 344 (Miss.1994). In Peaster, Jimmy Wilcoxson, an employee of the drilling company was assisting in efforts to lower a drill rig onto a trailer. He was standing between the trailer and the truck intended to be used to tow the trailer when the trailer's brakes gave way and the employee was pinned between the trailer and the truck. Wilcoxson died as a result of his injuries and his mother, Vennie Peaster, brought a wrongful death suit against the employer, claiming that the employer wilfully failed to maintain the truck with knowledge that this created a situation where an accident giving rise to an injury was a substantial certainty. Peaster, 642 So.2d at 346. Her contention was that this wilful failure to act in the face of certain injury was the legal equivalent of a wilful intention to injure. The supreme court, conceding for purposes of analysis that the employer's actions could arguably constitute gross negligence, nevertheless, said this was an insufficient basis to take the case outside Miller. Id. at 348.
¶ 29. Alternatively, Peaster sought to have the supreme court recognize an exception to the exclusivity rule for the situation where an employer permits a condition to exist that is so hazardous that an injury is substantially certain. As we understand Peaster's contention, for purposes of this second argument she conceded the distinction between gross negligence or even conduct found to be in reckless disregard for the safety of others and the sort of wilful conduct described in Miller and sought to have injuries based on the former conduct excepted from the exclusivity rule, at least in those situations where the hazardous behavior makes an injury of some sort "substantially certain." Peaster, 642 So.2d at 348-49. The supreme court declined to create such an exception, saying that such an interpretation of the law in its present state was not warranted and that any such increase in the exposure of employers to tort liability for employees injured on the job would require legislative action. Id. at 349.
¶ 30. There is no contention in this case, nor is there any evidence that supports such a contention, that Linkous purposely installed the anchor bolts at something less than the optimal depth suggested by the engineers for the specific purpose of causing the collapse of the column. Taken in the light most favorable to Ms. Bevis's theory of the case, Linkous's failure to properly repair the damaged bolts cannot be logically described as anything but gross negligence or reckless indifference. Under the plain language of the various Mississippi Supreme Court cases that have considered the issue, such a determination would not, as a matter of law, permit Ms. Bevis to pursue this wrongful death claim against Linkous instead of seeking those death benefits afforded for a work-related accidental death under Mississippi's workers' compensation laws. The trial court did not err in granting summary judgment to Linkous.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.