**C.A.T. INDUSTRIAL DISPOSAL, INC. d/b/a A.C.T. I Disposal, Plaintiff–Appellant,**

v.

**BROWNING–FERRIS INDUSTRIES, INC., Defendant–Appellee.**

No. 89–1167
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 22, 1989.

David B. Kultgen, Beard & Kultgen, Waco, Tex., for plaintiff-appellant.

Gerard G. Pecht, J. Rufus Wallingford, A. Frank Koury, William R. Pakalka, Fulbright & Jaworski, Houston, Tex., for defendant-appellee.

Before WILLIAMS, SMITH and DUHE, Circuit Judges.

PER CURIAM:

Appellant C.A.T. Industrial Disposal, Inc. d/b/a A.C.T. I Disposal (hereinafter "ACT I") sued under Section 4 of the Clayton Act, 15 U.S.C. § 15, and Section 2 of the Sherman Act, 15 U.S.C. § 2, for treble damages from defendant-appellee Browning–Ferris, Inc. (hereinafter "BFI").[1]

■ Since 1986, BFI has been ACT I's main competitor in the commercial containerized refuse collection business in Corsicana, Texas. ACT I controls at least 80%, perhaps as much as 90%, of the commercial waste collection disposal market in town. BFI handles approximately 10% of the market, in addition to 100% of the Corsicana residential waste disposal accounts. Appellant claims that BFI has attempted to monopolize the commercial market, in violation of the antitrust laws, by engaging in "predatory pricing."[2]

The district court granted summary judgment in favor of defendant BFI, finding that ACT I was unable to show a dangerous probability that BFI would succeed in its alleged monopoly attempt. 704 F.Supp. 120. We affirm.

## I.

Summary judgment is proper when the pleadings and other evidence before the court show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Summary judgment may be entered if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Appellant ACT I contends that it raised genuine issues of fact sufficient to withstand summary judgment.

■ Section 2 of the Sherman Act makes it unlawful for any person to monopolize or attempt to monopolize any part of the trade or commerce among the several States. 15 U.S.C. § 2. A party who is injured by a violation of § 2 of the Sherman Act may sue to recover treble damages under § 4 of the Clayton Act. 15 U.S.C. § 15; *Adjusters Replace–A–Car, Inc. v. Agency Rent–A–Car, Inc.*, 735 F.2d 884, 887 (5th Cir. 1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 910, 83 L.Ed.2d 924 (1985). In order to prevail on its claim under these sections, ACT I must be able to prove three elements: (1) specific intent to accomplish the monopoly; (2) anti-competitive activity, and (3) a dangerous probability that the attempt will be successful. *See Swift Co. v. United States*, 196 U.S. 375, 396, 25 S.Ct. 276, 279, 49 L.Ed. 518 (1905); *Adjusters Replace–A–Car*, 735 F.2d at 887.

In reaching its decision, the district court acknowledged initially that ACT I raised questions of fact as to the first two elements of its claim. The court correctly determined, however, that no substantial fact issue was raised as to the third element. Summary judgment followed. We discuss this element below.

## II.

■ Appellant must be able to show that a dangerous probability exists that BFI will be successful in its attempt to monopolize the commercial refuse market in Corsicana through "predatory pricing."[3] ACT I con-

1. In its original complaint, plaintiff-appellant named as defendant Browning–Ferris Industries, Inc., apparently a Texas corporation and the parent of appellee BFI. ACT I subsequently amended its complaint to name BFI, identified in the record as a Delaware corporation, as defendant.

2. Predatory pricing is the practice of setting prices below cost for the purpose of driving out one's competitors, thereby achieving a monopoly of the relevant market. Under such a scheme a

defendant "sacrifice[s] present revenues ... with the hope of recouping the losses through subsequent higher prices." *International Air Industries, Inc. v. American Excelsior Co.*, 517 F.2d 714, 723 (5th Cir.1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (1976).

3. Appellant also argues that the dangerous probability requirement does not apply to "predatory pricing" claims. We reject this argument for two reasons. First, appellant failed to raise this issue before the district court. Absent special

trols the vast majority of the commerical accounts in Corsicana, while BFI only represents approximately 10% of the market. "While we 'must be particularly wary of the numbers game of market percentage when considering an "attempt to monopolize" suit', a defendant must have some legally significant share of the market before he approaches the level of dangerous probability of success condemned by the attempt provision in section two." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 490 (5th Cir.1984) (citations omitted).

■ While the exact market share percentage necessary to prove an attempt to monopolize may vary under different market conditions, absent a showing of special market conditions, a market share of less than 10%, as matter of law, usually will not support a finding of attempt to monopolize. *Domed Stadium*, 732 F.2d at 491. In view of BFI's low market share, appellant can only prevail if it can demonstrate sufficient "special market conditions" to support its claim.

In *Domed Stadium*, this Court identified several factors that could support an "attempt to monopolize" claim in which defendant's market share is substantially below 50%. These factors include concentration of the market, high barriers to entry, consumer demand, strength of competition, and consolidation trends in the market. *Domed Stadium*, 732 F.2d at 490.

The commercial containerized refuse disposal market in Corsicana[4] is relatively concentrated, normally a fact that would weigh in appellant's favor. But of particular significance in the case before us is the fact that the company holding approximately 90% of the market share urges that the company holding about 10% of the market share is creating a dangerous probability of monopoly.

Admittedly, BFI is a strong competitor as a national multi-million dollar company engaged in the commercial waste disposal business. Consumer demand is relatively static, because of the nature of the refuse disposal business. Users must dispose of the waste they generate and no alternative to the services of BFI and ACT I exists. No trends of market consolidation are in evidence. The barriers to entry into the business, however, are quite low as illustrated by ACT I's own entry with less than twenty thousand dollars capitalization.

The low barriers to entry present in the Corsicana market are especially significant because inherent in a predatory pricing scheme is the predator's need to recoup losses through subsequent higher prices. *See, e.g., International Air Industries, Inc. v. American Excelsior Co.*, 517 F.2d 714, 723 (5th Cir.1975), *cert. denied*, 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (1976). Whatever BFI's intent, it is unlikely that it would be able to control prices for any meaningful period, because other competitors easily can enter the market.

As the district court found, when weighed against BFI's low 10% market share and the low barrier to entry into the relevant market, these conditions are insufficient to give rise to a substantial fact issue as to a dangerous probability that BFI could succeed in a monopoly attempt. We, therefore, affirm the decision of the district court granting summary judgment for defendant BFI.

AFFIRMED.

circumstances, this Court will not hear issues not raised in or decided by the district court. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Thomas v. Capital Sec. Services, Inc.*, 836 F.2d 866, 884 n. 25 (5th Cir.1988) (en banc). Secondly, appellant offers no authority for its argument other than vague dicta in a footnote in *Dimmitt Agri Industries, Inc. v. CPC International Inc.*, 679 F.2d 516, 534 n. 21 (5th Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983). The law to the contrary is well established. *Domed Stadium*, 732 F.2d 480 (5th Cir. 1984) applied the dangerous probability requirement to a predatory pricing claim.

4. For purposes of summary judgment, the parties agreed that the relevant market is limited to the commercial refuse disposal market within the city of Corsicana.